IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SUSAN SIU, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| KANTHI DE ALWIS, CITY AND<br>COUNTY OF HONOLULU,<br>WILLIAM W. GOODHUE, ALICIA<br>KAMAHELE, AND DENISE<br>TSUKAYAMA, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

Civ. No. 07-00386 DAE-LEK

ORDER DENYING DEFENDANTS' OBJECTION TO PLAINTIFF'S ERRATA
FILING AND GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On June 12, 2009, the Court heard Defendants' Motions.  Mark S.

Beatty, Esq., appeared at the hearing on behalf of Plaintiff; John P. Moran, Esq.,

and Stephanie L. Marn, Esq., appeared at the hearing on behalf of Defendants.

After reviewing the motions and the supporting and opposing memoranda, the

Court DENIES Defendants' objection to Plaintiff's errata filing and GRANTS IN

PART AND DENIES IN PART Defendants' motion for summary judgment.

BACKGROUND

In 1984, Susan Siu began working for the Medical Examiner's Office

("MEO") of the City and County of Honolulu ("CCH").  (Defendants' Separate

and Concise Statement of Facts ("Def. SCSF") at Fact 2.)  She became Chief

Investigator in 2001.  (Id.)  Kanthi De Alwis, a named Defendant and a woman,

was and continues to be the Chief Medical Examiner for the Department of the

Medical Examiner.  (Decl. of Kanthi De Alwis at ¶ 3.)

Plaintiff alleges that from the time she began working with De Alwis,

her direct supervisor, she has been the target of sexual harassment in the form of

"repetitive, crude and abusive comments of a sexual nature."  (Amended Compl. at

¶ 3.)  Beginning September 3, 2004 until Plaintiff's Administrative Leave on

September 2, 2005, such incidents became more frequent.  (Id.)  Plaintiff alleges

that Defendant De Alwis referred to Plaintiff "on a monthly basis" as "GP," which

the parties agree means "Golden Pussy."  (Amended Compl. at ¶ 42(b); Decl. of

Kanthi De Alwis at ¶ 9.)  Defendant, however, admits to using that nickname only

once.  (Decl. of Kanthi De Alwis at ¶ 9.)

Other incidents Plaintiff alleges include: Defendant De Alwis

"insinuated numerous times" that Plaintiff provided "sexual favors" to male

employees in exchange for quick responses to work requests; De Alwis once asked

Plaintiff whether she "had a boob job" because her "boobs looked so big;"

De Alwis once commented that Plaintiff's pants were "not sexy;" and during staff

meetings De Alwis "often mentioned when she was having PMS so staff would

know when she was in a bad mood."  (Amended Compl.  at ¶ 42(c)-(f).)  Defendant

2

De Alwis, however, denies making "any derogatory comment about the Plaintiff's clothing, bust or moral habits."  (Decl. of Kanthi De Alwis at ¶ 10.)

On July 29, 2005, Plaintiff filed an Employee's Claim for Workers' Compensation Benefits, alleging "inappropriate treatment from supervisor" and describing her injury as "stress."  (Def. SCSF at Fact 13; Employee's Claim for Workers' Compensation Benefits, Ex. A.)  The State of Hawaii Department of Labor and Industrial Relations, Disability Compensation Division, accepted her claim on November 30, 2005.  (Def. SCSF at Fact 17; Nov. 30, 2005 Letter from Dave Hite, Ex. F.)

On September 2, 2005, Plaintiff went on paid administrative leave and has not returned to work.  (Def. SCSF at Facts 7-8.)   Plaintiff asserts that Defendant Denise Tsukayama told her to leave due to a hostile work environment, "implying Plaintiff was in danger if she stayed there."  (Amended Compl. at ¶ 133.) Defendants allege Plaintiff elected to take paid administrative leave.  (Def. SCSF at Fact 14; Decl. of Tsukayama at ¶ 10.)

Also on September 2, 2005, Plaintiff filed two separate complaints against Defendants.  The first was with the U.S. Equal Employment Opportunity Commission ("EEOC"), Honolulu Local Office, alleging employment

discrimination.[1]  (Def. SCSF at Fact 9.)  Plaintiff's EEOC complaint eventually

resulted in the portion of this lawsuit alleging discrimination against CCH.

(Amended Compl. at ¶ 7; April 26, 2007 EEOC Right to Sue Letter, Ex. A.)

Plaintiff's second complaint was with the Department of Human

Resources for CCH, alleging that Defendant De Alwis engaged in sexual

harassment, discrimination, and retaliation.  (Def. SCSF at Fact 22; Dec. 5, 2008

Letter from Ken Y. Nakamatsu, Ex. I.)  On December 5, 2008, the Department of

Human Resources completed its investigation, having found no evidence of

prohibited discrimination, harassment, or retaliation.  (Id.)  The investigation

determined, however, that Defendant De Alwis "made an inappropriate sexual

remark in the workplace on one occasion several years ago," referring to "GP."

(Id.)

On October 31, 2005, while on administrative leave, Plaintiff

underwent a psychiatric evaluation by Dr. Byron A. Eliashof.  (Def. SCSF at Fact

15.)  Dr. Eliashof diagnosed Plaintiff with, among other conditions, the following:

Major Depressive Disorder; Post Traumatic Stress Disorder ("PTSD"); Relational

---

[1]  The parties, in their Separate and Concise Statements of Fact, agree that Plaintiff filed an EEOC complaint on September 2, 2005.  Plaintiff signed her EEOC Charge of Discrimination, however, on September 13, 2005, and the form was received by EEOC on September 16, 2005.  (See EEOC Complaints of Susan Siu, Amended Compl., Ex. B.)

Problem NOS ("Not Otherwise Specified") - conflict with superior and co-workers; and irritable bowel syndrome ("IBS").  (Def SCSF at Fact 16; Nov. 25, 2005 Report From Dr. Byron A. Eliashof, M.D. at 20, Ex. C.)  Dr. Eliashof also concluded that "there is a probable causal relationship between Ms. Siu's psychiatric condition and her work."  (Nov. 25, 2005 Report From Dr. Byron A. Eliashof, M.D. at 21, Ex. C.)

Also while on administrative leave, KITV twice interviewed Plaintiff about her work at MEO: first on November 8, 2005, and again on November 11. (Def. SCSF at Fact 10; Amended Compl. at ¶¶ 138-39, Doc. # 35.)  In these interviews, Plaintiff was critical of MEO practices, including improper training. (Amended Compl. at ¶¶ 138-139, Doc. # 35.)

On November 10, 2005, MEO employees met to discuss Plaintiff's employment situation.  (Def. SCSF at Fact 11.)  Defendants De Alwis and Tsukayama were present at the meeting.  (Id.; Decl. of Denise Tsukayama at ¶¶ 12-14; Decl. of Kanthi De Alwis at ¶¶ 4-6.)  Also present were Defendants William W. Goodhue, De Alwis's Deputy Medical Examiner, (Def. SCSF at Fact 11; Decl. of William W. Goodhue, Jr. At ¶¶ 4-6), and Defendant Alicia Kamahele, De Alwis's secretary.  (Def. SCSF at Fact 11; Decl. of Alicia Kamahele at ¶¶ 4-6.)

On November 16, 2005, "the employees of MEO" filed an ethics complaint against Plaintiff, alleging misconduct and violations of workplace policies against sexual harassment and violence.  (Def. SCSF at Fact 23; May 5,

5

2008 Letter from Ken Y. Nakamatsu, Ex. J.)  On May 5, 2008, the Department of

Human Resources completed its investigation, having found no violation of work

place policies and no major misconduct.  (Id.)  The investigation determined,

however, that Plaintiff acted "inappropriately" on a number of occasions.  (Id.)  As

of May 1, 2009, Plaintiff had not returned to work at MEO.  (Def. SCSF at Fact 8.)

Plaintiff brought this action against several named Defendants and

CCH.  On October 24, 2007, Plaintiff filed a First Amended Complaint.  (Doc. #

35.)  On February 10, 2009, the parties filed a Stipulation For Partial Dismissal

With Prejudice As To Counts 4, 11, 12, 13, and 15 of the First Amended Complaint

Filed October 24, 2007 ("Feb. 10, 2009 Stipulation").  (Doc. # 184.)

In the remaining claims, Plaintiff alleges violations of her rights under

the First Amendment to the United States Constitution, Title VII, H.R.S. §§ 378-2

and 378-62, as well as state tort claims for conspiracy, intentional infliction of

emotional distress, and negligent infliction of emotional distress.  Plaintiff seeks

declaratory relief, injunctive relief, and damages, including punitive damages,

together with costs and attorney's fees.

On February 26, 2009, Defendants filed a Motion for Summary

Judgment (Doc. # 185), and a Separate and Concise Statement of Facts (Doc. #

186).  On April 16, 2009, Plaintiff filed an Opposition and a Separate Concise

Statement of Facts.  (Doc. # 193.)  On April 22, 2009, Plaintiff filed an Errata to her

Opposition.  (Doc. # 194.)  Defendants filed a Reply on April 23, 2009.  (Doc. # 195.)  On April 26, 2009, Plaintiff filed an Errata to her Separate Concise Statement of Facts (Doc. # 197), to which Defendants filed an objection on April 28, 2009 (Doc. # 198).  Plaintiff then filed a reply to Defendants' objection to her errata filing.  (Doc. # 199.)

This matter originally came for a hearing before Judge Helen Gillmor on May 4, 2009.  At the hearing, Judge Gillmor informed the parties that she would have to recuse herself from the case.  Accordingly, the case and the instant motion were reassigned to this judge and set for hearing.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  A moving party without the ultimate burden of persuasion at trial -- usually, but not always, the defendant -- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391

8

U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

I.    Defendants' Objection to Plaintiff's Errata Filing

Defendants object to Plaintiff's errata to her concise statement of facts, which was filed three days after Defendants had submitted their reply to the motion for summary judgment.  Defendants argue that the errata was inappropriately late and raised several new issues to which they had no opportunity to properly respond in their reply.

In her response to Defendants' objection, Plaintiff argued that the changes were minimal.  Specifically, the errata added a footnote on the second page of the concise statement of facts and disputed Facts 14 and 22 in greater detail.

The Court agrees with Defendants that Plaintiff's errata was inappropriately late and changed the substance of her statement of facts.  Plaintiff's errata to Fact 14, in particular, has a significant impact on the motion for summary judgment.  Plaintiff's errata contends that Defendant Tsukayama instructed Plaintiff to go on administrative leave because she was experiencing hostility from coworkers and Defendant De Alwis.  Defendants, in contrast, contend Plaintiff voluntarily chose to take administrative leave.

Nevertheless, in the interest of adjudicating the motion for summary judgment with all of the facts available, the Court DENIES Defendants' objection and motion to strike the errata.  Although the Court recognizes that Defendants did not have an opportunity to respond to Plaintiff's errata in writing due to Plaintiff's carelessness, Defendants were able to substantively respond orally at the hearing before this Court.  Defendants, therefore, suffered little prejudice by Plaintiff's late filing.

II.     Defendants' Motion For Summary Judgment

Defendants move for summary judgment on all of the remaining claims and any request for punitive damages.  The Court will address each issue in turn.

A.     Plaintiff's Title VII Claims

Plaintiff asserts her Title VII claims only against Defendant CCH.  (Feb. 10, 2009 Stipulation at 3, Doc. # 184.)

1.     Plaintiff's Hostile Work Environment Claim (Count 11)

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer or an employment agency to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of the individual's sex. 42 U.S.C. § 2000e-2(a)(1). Title VII is violated if workplace sexual harassment is so severe or pervasive as to create a hostile work environment.  Kortan v. Calif. Youth Auth., 217 F.3d 1104, 1109-10 (9th Cir. 2000); see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993) ("[T]he very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their . . . gender . . . offends Title VII's broad rule of workplace equality."); Montero v. AGCO Corp., 192 F.3d 856, 860 (9th Cir. 1999).

11

An employer is liable under Title VII for conduct giving rise to a hostile work environment where the employee proves: (1) that she was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Kortan, 217 F.3d at 1109-1110; see also Penn. State Police v. Suders, 542 U.S. 129, 146-147 (2004); Pavon v. Swift Trans. Co., Inc., 192 F.3d 902, 908 (9th Cir. 1999). The harassing conduct "need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). The motivation can be a "general hostility to the presence of women in the workplace." Id.; see also Kortan, 217 F.3d at 1110. However, such hostility can occur between people of the same gender; harassment is not limited to acts between persons of the opposite sex. See, e.g., Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864 (9th Cir. 2001) (finding hostile work environment when comments were made by male supervisor regarding male employee's effeminate nature).

The harassing conduct "must be extreme to amount to a change in the terms and conditions of employment." Kortan, 217 F.3d at 1110; see also Montero, 192 F.3d at 860. The "sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or

12

abusive, and one that the victim in fact did perceive to be so." Id.  In order to determine whether a work environment is sufficiently hostile or abusive, the Court must "look[] at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (internal quotations omitted).

Title VII, however, does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." Id. at 788 (quoting Oncale, 523 U.S. at 81). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. (internal quotations omitted); see also Oncale, 523 U.S. at 82.  In other words, "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not actionable under the statute. Id.

In this case, genuine issues of material fact exist as to the severity and pervasiveness of the conditions in Plaintiff's workplace.  Plaintiff alleges that De Alwis made comments on Plaintiff's menstrual cycle on a monthly basis and "on numerous occasions" made remarks about her breasts, sexual history, and physical

13

features.  De Alwis admits only to commenting on Plaintiff experiencing PMS on

one occasion and denies making any other such inappropriate comments.  Viewing

the facts in the light most favorable to the Plaintiff, the Court finds that such actions

could rise to the level of hostility forbidden under Title VII.  Although the

comments fall short of physical abuse or outright sexual advances, "the required

showing of severity . . . of the harassing conduct varies inversely with the

pervasiveness or frequency of the conduct."  Ellison v. Brady, 924 F.2d 872, 879-80

(9th Cir. 1991); Davis v. Team Elec. Co., 520 F.3d 1080, 1096 (9th Cir. 2008).  As

such, the frequency of inappropriate comments may overcome their relative casual

nature.  Because the conduct occurred repeatedly, according to Plaintiff, a

reasonable woman may have a reaction similar to Plaintiff.  See Davis, 520 F.3d at

1096.  Moreover, the Ninth Circuit recognized that "in close cases . . . where the

severity of frequent abuse is questionable, it is more appropriate to leave the

assessment to the fact-finder than for the court to decide the case on summary

judgment."  Id.

      2.     Plaintiff's Retaliation Claim (Count 11)

Title VII also prohibits employers from discriminating against an

employee because "he has opposed any practice made an unlawful employment

practice by [42 U.S.C. §§ 2000e - 2000e-17], or because he has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [42 U.S.C. §§ 2000e - 2000e-17]." 42 U.S.C. § 2000e-3(a).

The Ninth Circuit has held that for an employee to make a prima facie case of retaliation under Title VII, the employee must show that (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000) (citing Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir. 1994)).

If Plaintiff successfully presents a prima facie retaliation claim, "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision." Id. (citing Steiner, 25 F.3d at 1464-65). "If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." Id. (citing Steiner, 25 F.3d at 1464-65).

In this case, Plaintiff has failed to present a prima facie case of retaliation under Title VII. It does appear Plaintiff may have engaged in protected activity by filing complaints with both EEOC and the Department of Human Resources. Ray, 217 F.3d at 1240 n.3 ("filing a complaint with the EEOC is a protected activity"); see also 42 U.S.C. § 2000e-3(a). However, Plaintiff's employer did not subject her to an adverse employment action. Plaintiff's

15

retaliation allegations rest on the fact that "employees of MEO," including named

Defendants, filed an ethics complaint against her.

Generally, actions of fellow employees may not constitute adverse

employment actions under Title VII. See 42 U.S.C. § 2000e-3(a) ("It shall be an

unlawful employment practice for an employer to discriminate against any of his

employees . . ..") (emphasis added). The Ninth Circuit has recognized, however,

that "Title VII's protection against retaliatory discrimination extends to employer

liability for co-worker retaliation that rises to the level of an adverse employment

action." Fielder v. UAL Corp., 218 F.3d 973, 985 (9th Cir. 2000), vacated on other

grounds, 536 U.S. 919 (2002). Such vicarious liability is limited. "[E]mployers are

not vicariously liable for retaliatory harassment by co-workers; rather, it is only the

employer's encouragement or toleration of such harassment that may constitute an

adverse employment action." Watson v. Las Vegas Valley Water Dist., 268 Fed.

Appx. 624, 627 (9th Cir. 2008)[2]; see Fielder, 218 F.3d at 984 ("Adverse

employment actions include 'employer actions such as . . . toleration of harassment

by other employees.'" (quoting Wyatt v. Boston, 35 F.3d 13, 15-16 (1st Cir. 1994)

(emphasis in Fielder))); id. ("Nothing indicates why a different form of retaliation --

namely, retaliating against a complainant by permitting her fellow employees to

---

[2]This case is not cited for precedential purposes but the Court finds its
reasoning persuasive. Ninth Cir. R. 36-3(a).

punish her for invoking her rights under Title VII -- does not fall within the statute."

(quoting <u>Knox v. Indiana</u>, 93 F.3d 1327, 1334 (7th Cir. 1996))).

In this case, assuming <u>arguendo</u> that the filing of an ethics complaint

constitutes harassment that can rise to the level of an adverse employment action,

Plaintiff has failed to show that CCH encouraged or tolerated such harassment.

Instead, Plaintiff's employer acted swiftly to investigate all complaints filed -- by

both Plaintiff and "employees of MEO." The decision to undertake an investigation

as a result of a filed complaint cannot be construed as encouragement or toleration

that would violate Title VII. To hold otherwise would expose an employer to civil

liability for retaliation when it fulfills its duty to investigate claims of harassment.

<u>See</u> <u>Swenson v. Potter</u>, 271 F.3d 1184, 1192 (9th Cir. 2001) ("Notice of the

sexually harassing conduct triggers an employer's duty to take prompt corrective

action that is reasonably calculated to end the harassment." (internal quotation

marks omitted)).

Accordingly, the Court finds that summary judgment is GRANTED

with respect to Plaintiff's Title VII retaliation claim.

B.    <u>Plaintiff's First Amendment Claim Under § 1983 (Count 14)</u>

Plaintiff alleges a violation of her First Amendment rights against

Defendants De Alwis, Goodhue, Kamahele, all in their individual capacity, and

CCH. (Feb. 10, 2009 Stipulation at 4, Doc. # 184.)

17

Defendants argue that Plaintiff has failed to allege a cognizable cause of action and that the individual Defendants are entitled to qualified immunity for Plaintiff's First Amendment claim.[3]  (Mot. at 25-26.)  Because the Court finds that Plaintiff's First Amendment retaliation claim fails, it need not address whether the individual Defendants would be entitled to qualified immunity.

The Supreme Court has concluded that public employees suffer a constitutional violation when they are disciplined for making protected speech.  See Pickering v. Bd. of Educ., 391 U.S. 563, 565 (1968).  "To state a First Amendment claim against a public employer, an employee must show: 1) the employee engaged in constitutionally protected speech; 2) the employer took 'adverse employment action' against the employee; and 3) the employee's speech was a "substantial or motivating" factor for the adverse action."  Marable v. Nitchman, 511 F.3d 924, 929 (9th Cir. 2007) (internal citations omitted).  To be "constitutionally protected," the employee must engage in speech outside her "official duties."  Id. (citing Garcetti v. Ceballos, 547 U.S. 410, 421 (2005)).  "The burden then shifts to the employer to demonstrate that it would have acted the same way even in the absence of the protected conduct."  Strahan v. Kirkland, 287 F.3d 821, 825 (9th Cir. 2002)

---

[3]It appears Defendants only move for qualified immunity with respect to Plaintiff's First Amendment claim, and not for any of the other claims under federal law.

(citations omitted).  The plaintiff is then obligated to tender additional evidence to establish that the employer's rationale was pretextual.  Id.

In this case, as with Plaintiff's Title VII retaliation claim, Defendants are entitled to summary judgment.  Plaintiff has failed to allege that her employer engaged in an adverse employment action.  Instead, Plaintiff bases her First Amendment claim on the actions taken by the "employees of MEO" in filing their ethics complaint against her and in the resulting investigation.  This Court has already ruled that such actions do not constitute adverse employment actions because they were not conducted by Plaintiff's employer nor were they encouraged or tolerated by the employer.  As such, Plaintiff has failed to state a viable claim for retaliation in response to exercising her First Amendment rights and summary judgment with respect to this claim is GRANTED.

C.     Plaintiff's Intentional Infliction Of Emotional Distress Claim
       (Count 10)

Plaintiff asserts a claim of intentional infliction of emotional distress ("IIED") against Defendants De Alwis, Goodhue, Kamahele, and Tsukayama, all in their individual capacity.  (Feb. 10, 2009 Stipulation at 3, Doc. # 184.)

"Under Hawai'i law, the elements of IIED are '(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another.'"  Enoka v. AIG

19

Haw. Ins. Co., 128 P.3d 850, 872 (Haw. 2006) (quoting Hac v. Univ. of Haw., 73 P.3d 46, 60-61 (Haw. 2003)).  The Hawaii Supreme Court defines the term "outrageous" as conduct "without just cause or excuse and beyond all bounds of decency."  Enoka, 128 P.3d at 872.  "Moreover, 'extreme emotional distress' constitutes, inter alia, mental suffering, mental anguish, nervous shock, and other 'highly unpleasant mental reactions.'"  Id.  (quoting Hac, 73 P.3d at 60).

Even viewing the facts in the light most favorable to Plaintiff, this Court finds that Plaintiff has not demonstrated actions that rise to the level of sufficiently "outrageous" behavior to state a cognizable claim for IIED.  Defendant De Alwis's comments, if made as alleged, were inappropriate.  They were not, however, "beyond all bounds of decency."  Accordingly, Defendants' motion for summary judgment on Plaintiff's claim for IIED is GRANTED.

D.    Plaintiff's Claim for Negligent Infliction of Emotional Distress (Count 4)

Plaintiff asserts a claim of negligent infliction of emotional distress ("NIED") only against Defendant CCH.  (Feb. 10, 2009 Stipulation at 3, Doc. # 184.)  A plaintiff may recover for NIED "where a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case."  Doe Parents No. 1 v. State, Dep't of Educ., 58 P.3d 545, 580 (Haw. 2002) (citation and internal quotation marks omitted).  An

NIED claim that fails to allege physical injury as damage "is nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed utilizing ordinary negligence principles." Id. (citation and internal quotation marks omitted).  To maintain an NIED claim, the Hawaii Supreme Court, thus, has held that a person must allege "that someone was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else," otherwise the person may maintain a negligence claim only.  Id. at 580-81 (emphasis in original).

The Supreme Court of Hawaii, however, has carved out specific categorical exceptions to this general rule.  For example, the court has allowed recovery for an NIED claim without a showing of an injury for HIV exposure, for mishandling of a corpse, and for parents seeking recovery for a teacher's molestation of their child at school.  Doe Parents, 58 P.3d at 90; see also Soone v. Kyo-Ya Co., 353 F. Supp. 2d 1107, 1118 (D. Haw. 2005).  These exceptions were created based upon the reasonableness standard articulated in Rodrigues v. State, 52 Haw. 283 (Haw. 1970) -- i.e., where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case.  Soone, 353 F. Supp. 2d at 1118.

In this case, Plaintiff does not allege any physical injury but instead presents evidence that she suffers from depression, PTSD, and IBS. The Court finds that these conditions are not sufficiently distressing to warrant an exception to the physical injury requirement in NIED. Plaintiff's emotional suffering simply does not rise to the same level of distress associated with accidental exposure to HIV, mishandling of a corpse, or molestation of a child. Accordingly, the Court GRANTS Defendants' motion for summary judgment with respect to Plaintiff's NIED claim.

E.     Plaintiff's Hostile Environment Sexual Harassment Claim Under H.R.S. § 378-2 (Count 11)

Plaintiff asserts a Hostile Environment Sexual Harassment ("HESH") claim, pursuant to H.R.S. § 378-2, only against Defendant CCH. (Feb. 10, 2009 Stipulation at 3, Doc. # 184.) Under Hawaii law, sexual harassment is a form of sex discrimination prohibited by HRS § 378-2. See Hawaii Administrative Rules ("HAR") § 12-46-109(a) (1998).

The Hawaii Supreme Court requires the following elements in proving a HESH claim:

> (1) he or she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct or visual forms of harassment of a sexual nature;
> (2) the conduct was unwelcome;
> (3) the conduct was severe or pervasive;
> (4) the conduct had the purpose or effect of either:

      (a) unreasonably interfering with the claimant's
      work performance, or
      (b) creating an intimidating, hostile, or offensive
      work environment;
    (5) the claimant actually perceived the conduct as having
    such purpose or effect; and
    (6) the claimants perception was objectively reasonable to
    a person of the claimant's gender in the same position as
    the claimant.

Nelson v. Univ. of Haw., 97 Haw. 376, 390 (2001).

In addition, regarding the conduct's intensity, "the required showing of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." Id.

Similar to Plaintiff's allegations of a hostile work environment under Title VII, Plaintiff has demonstrated a genuine issue of material fact as to severity and pervasiveness of the harassment. As such, summary judgment is DENIED with respect to Plaintiff's claim under H.R.S. § 378-2.

F.    Plaintiff's Whistleblower Claim Under H.R.S. § 378-62 (Count 13)

Plaintiff asserts a violation of the Hawaii Whistleblower Protection Act ("HWPA"), H.R.S. § 378-62, by Defendants De Alwis, Goodhue, and Kamahele, all in their individual capacity, and CCH. (Feb. 10, 2009 Stipulation at 4, Doc. # 184.) HWPA makes it unlawful for an employer to retaliate against a

23

whistleblower.  H.R.S. § 378-62.  The elements for proving a claim under HWPA are: (1) there must be a showing that the employee engaged in protected conduct; (2) the employer took some adverse action against the employee; and (3) there must be a causal connection between the alleged retaliation and the whistleblowing.  Crosby v. State Dept. of Budget & Fin., 76 Haw. 332, 342 (1994), cert. denied, 513 U.S. 1081 (1995).

As with Plaintiff's retaliation claims, Defendants are entitled to summary judgment for the HWPA claim.  Although Plaintiff may have engaged in protected conduct when she filed the EEOC and ethics complaints, her employer never took adverse action against her.  As such, Defendants' motion for summary judgment is, therefore, GRANTED with respect to Plaintiff's whistleblower claim.

G.    Plaintiff's Claim for Conspiracy (Count 7)

Plaintiff alleges that Defendants De Alwis, Goodhue, Kamahele, and Tsukayama, all in their individual capacity, conspired against her.  (Feb. 10, 2009 Stipulation at 3, Doc. # 184.)  "[T]he tort of conspiracy has not been clearly defined" in Hawaii case law.  Weinberg v. Mauch, 78 Haw. 40, 49 (1995) (internal citations omitted).  Still, "it is clear that there can be no civil claim based upon a conspiracy alone. [If a plaintiff does] not set forth any actionable claim based upon

24

deceit, there can be no claim against any alleged joint tortfeasor based solely upon conspiracy to deceive." Id. (internal citations omitted); Moore v. Brewster, 96 F.3d 1240, 1245 (9th Cir. 1996).

"In general, the common law tort of civil conspiracy has three elements: (1) the formation of a conspiracy; (2) wrongful conduct in furtherance of the conspiracy, i.e., an actionable claim based upon deceit; and (3) damage." Valvanis v. Milgroom, No. 06-00144 JMS-KSC, 2009 WL 1561571, at * 9 (D. Haw. June 1, 2009) (citing Duncan v. Stuetzle, 76 F.3d 1480, 1490 (9th Cir.1996) (applying California law)).

Here, the underlying actionable claims for conspiracy are retaliation under Title VII and violations of the HWPA and the First Amendment.  Plaintiff emphasizes the November 10, 2005 meeting as the conspiratorial gathering in which the Defendants decided to file the ethics complaint against her.

The Court has, however, dismissed all of the underlying actionable claims for retaliation and for violations of the HWPA and the First Amendment.  As such, Plaintiff has failed to establish an underlying "actionable claim based upon deceit." Weinberg, 78 Haw. at 49.  Without these predicate claims, Plaintiff's

25

action for conspiracy cannot stand.  Accordingly, Defendants' motion for summary judgment regarding Plaintiff's claim of civil conspiracy is GRANTED.

       H.     <u>Plaintiff's Prayer for Punitive Damages</u>

       Defendants move to dismiss Plaintiff's claims for punitive damages. (Mot. at 27-28.)  Defendants argue that Plaintiff cannot seek punitive damages against CCH and have not shown the requisite "reckless or callous disregard" to warrant punitive damages.  <u>Smith v. Wade</u>, 461 U.S. 30, 51 (1983).

       Municipalities such as CCH cannot be held liable for punitive damages.  <u>See</u> <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 260 (1981); <u>Sherman v. County of Maui</u>, 191 Fed. Appx. 535, 537 (9th Cir. 2006); <u>Lauer v. YMCA of Honolulu</u>, 57 Haw. 390, 402 (1976).

       The Court has now granted summary judgment for all of Plaintiff's claims except those relating to a hostile work environment under Title VII and H.R.S. § 378-2.  By stipulation of the parties, Plaintiff only asserts those claims against CCH, not any of the individual Defendants.  (Feb. 10, 2009 Stipulation at 3, Doc. # 184.)  As such, Plaintiff's prayer for punitive damages cannot stand. Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's prayer for punitive damages is GRANTED.

<u>CONCLUSION</u>

For the above reasons, the Court DENIES Defendants' Objection to

Plaintiff's Errata Filing (Doc. # 198), and the Court GRANTS IN PART AND

DENIES IN PART Defendant's Motion For Summary Judgment (Doc. # 185).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 18, 2009.



_____
David Alan Ezra
United States District Judge

<u>Siu v. De Alwis, et al.;</u> Civ. No. 07-00386 HG-LEK; ORDER DENYING
DEFENDANTS' OBJECTION TO PLAINTIFF'S ERRATA FILING AND
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT